## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>PMTS LIQUIDATING CORP., et al.,<br><br>Debtors.<br>_____<br><br>NHB ASSIGNMENTS LLC,<br>LIQUIDATING TRUSTEE, ON BEHALF<br>OF THE LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL ATLANTIC LLC and<br>BRADEN KELLY,<br><br>Defendants. | ) Chapter 11<br>) Bank. No. 08-11551 (BLS)<br>) (Jointly Administered)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civ. No. 12-1020-SLR<br>)<br>)<br>)<br>)<br>)<br>) |

Norman M. Monhait, Esquire of Rosenthal, Monhait & Goddess, P.A., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Jeffrey Klafter, Esquire and Rachel Berlin, Esquire of Klafter Olsen & Lesser LLP and Kevin T. Hoffman, Esquire of Law Offices of Kevin T. Hoffman.

Gregory V. Varallo, Esquire, Steven J. Fineman, Esquire, and Robert L. Burns, Esquire of Richards, Layton & Finger, PA, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Allan J. Arffa, Esquire and Roberta Kaplan, Esquire of Paul, Weiss, Rifkind, Wharton & Garrison, LLP.

---

## MEMORANDUM OPINION

Dated: July 28, 2014
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

The instant action was originally filed on December 21, 2010 as an adversary proceeding[1] in the United States Bankruptcy Court for the District of Delaware ("the bankruptcy court"). Plaintiff NHB Assignments LLC ("plaintiff"), as liquidating trustee on behalf of a liquidating trust, alleges that defendants General Atlantic LLC ("GA LLC") and Braden Kelly ("Kelly") (collectively, "defendants") breached their fiduciary duties to ProxyMed, Inc. ("ProxyMed"), formerly the subject of a chapter 11 bankruptcy case ("the bankruptcy case") in the bankruptcy court. (Adv. Dkt. 1)[2] In the adversary proceeding, the bankruptcy court issued a ruling on defendants' motion to dismiss on the merits, which dismissed GA LLC from the case but allowed certain claims to go forward against Kelly. (Adv. Dkt. 36, 37)

Following that decision, Kelly asserted that the bankruptcy court lacked subject matter jurisdiction. (D.I. 17)[3] The jurisdictional issue prompted multiple filings by both parties, including several proposed amended complaints by plaintiff, as well as a motion to withdraw the reference so that the case could be adjudicated by and tried in this court. (See Adv. Dkt. 53, 57, 61, 70, 72, 89; D.I. 1, 27) The bankruptcy court subsequently issued an order and determination that the matter is a non-core proceeding (D.I. 13), and this court granted plaintiff's motion to withdraw the reference

---

[1]Adv. Proc. No. 10-56167.

[2]The court will use "Adv. Dkt." to refer to docket items for the adversary proceeding in the bankruptcy court.

[3]Where papers have been docketed in both this court and the bankruptcy court, the court will cite to its own docket.

on January 9, 2013. (D.I. 14)

On April 15, 2013, this court granted plaintiff's motion for leave to amend its complaint to cure deficiencies of subject matter jurisdiction. (D.I. 42) On July 31, 2013, plaintiff again moved to amend its complaint. (D.I. 47) On August 29, 2013, the court granted plaintiff's motion. (D.I. 57) Plaintiff filed its third amended complaint that same day, bringing claims of breach of fiduciary duty against Kelly and GA LLC, and a claim of aiding and abetting against GA LLC. (D.I. 59) Presently before the court is defendants' motion to dismiss for failure to state a claim. (D.I. 61) This court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

## II. BACKGROUND

On March 27, 2002, GA LLC, a private equity investment firm, acquired an approximately 29 percent ownership interest in ProxyMed, a healthcare transaction processing services company, for $25 million. (D.I. 59 at ¶¶ 1, 10-11) This acquisition entitled GA LLC to appoint two designees to the ProxyMed board as long as it maintained at least 5 percent ownership of outstanding common stock. (*Id.* at ¶ 12) Kelly, who was a managing director of GA LLC, served as the sole GA LLC designee on ProxyMed's board of directors ("the Board") from April 2002 to October 2006, and became chairman of the Board in February 2006. (*Id.* at ¶¶ 4, 9, 13, 31, 39) At that time, the Board had between five and eight directors. (D.I. 63, ex. 5 at 41, ex. 6 at 37) As a director, plaintiff alleges that Kelly was privy to ProxyMed's confidential business plans and "actively controlled" ProxyMed's major decisions. (D.I. 59 at ¶ 4)

Between 2003 and 2006, ProxyMed posted net losses each year. (*See* D.I. 63,

ex. 4 at 29 (2004 10K form, showing $5 million loss in 2003 and $3.8 million loss in 2004); ex. 5 at 19 (2005 10K form, showing $105.3 million loss in 2005); ex. 6 at 8 (2006 10K form, showing $6.6 million loss in 2006)). At the end of 2006, ProxyMed's accumulated deficit was $216 million. (*Id.*, ex. 6 at 8)

In March 2004, GA LLC was a "significant participant" in a $24.1 million financing for a ProxyMed acquisition. (D.I. 59 at ¶ 17) After this acquisition, GA LLC owned 26.8 percent of ProxyMed's outstanding shares. (*Id.* at ¶ 19)

On May 10, 2005, John Lettko ("Lettko") became CEO of ProxyMed after being "vetted" by Kelly and other GA LLC officers. (*Id.* at ¶¶ 23, 29) During his meetings with Lettko before Lettko was hired, plaintiff alleges that Kelly promised that GA LLC would continue to provide funding for ProxyMed's continued operation and growth. (*Id.* at ¶ 24) Once Lettko became CEO of ProxyMed, plaintiff alleges that "[GA LLC] required Lettko to provide periodic updates at its headquarters in Greenwich, CT, [where] [c]onfidential information, including strategic plans, concerning [ProxyMed] was discussed . . . ." (*Id.* at ¶ 37) Lettko also spoke with Kelly frequently for approval of various managerial decisions for the company. (*Id.* at ¶¶ 30-31) In 2006, when Lettko did not seek Kelly's approval for ProxyMed to acquire a small company, plaintiff alleges that Kelly "rebuked" Lettko for not clearing the decision through him first. (*Id.* at ¶ 34)

In March 2006, plaintiff alleges that Kelly again "repeatedly represented to ProxyMed that [GA LLC] would provide or participate in the financing necessary for ProxyMed's growth plans." (*Id.* at ¶ 48) In May 2006, Lettko proposed a new growth and acquisition strategy for ProxyMed to the Board. (*Id.* at ¶¶ 50-51) Plaintiff alleges

3

that at this meeting, Kelly stated that GA LLC would "either lead the financing or follow the financing" for the new strategy. (*Id.* at ¶ 51) In the months following the meeting, ProxyMed set out to acquire PPONext, a healthcare information technology company. (*Id.* at ¶ 52) In August 2006, Kelly spoke with Lettko multiple times regarding the PPONext acquisition, and plaintiff alleges that in those conversations Kelly did not retract or modify his previous statement regarding GA LLC's commitment to financing the acquisition. (*Id.* at ¶ 59)

Also in mid-2006, GA LLC was engaged in the allegedly "secret pursuit" of making a $1.2 billion investment to obtain a majority interest in one of ProxyMed's most significant competitors, Emdeon, Inc. ("Emdeon"). (*Id.* at ¶¶ 1, 41, 56, 64, 68-69) On August 3, 2006, while still serving as ProxyMed's chairman, Kelly spoke to Emdeon's chairman on behalf of GA LLC to assure him that GA LLC's interest in ProxyMed would not impede its transaction with Emdeon. (*Id.* at ¶¶ 57-58) GA LLC assigned Kelly this duty, and Kelly reported the details of the conversation to many senior officers at GA LLC. (*Id.*) Plaintiff also alleges that Kelly told Jonathan Korngold, a principal of GA LLC heading the Emdeon deal, about ProxyMed's plans to acquire PPONext. (*Id.* at ¶ 66)

In September 2006, before acquiring a letter of intent from PPONext to be acquired by ProxyMed, Lettko reached out to GA LLC to more specifically discuss the financing for the acquisition. (*Id.* at ¶¶ 65, 74) Between September 14 and 18, 2006, Kelly and other GA LLC officers allegedly represented to ProxyMed that GA LLC would "likely" be interested in participating in the financing on a pro rata basis. (*Id.* at ¶¶ 84,

4

87-88) ProxyMed subsequently met with other potential lenders to finance the rest of the PPONext acquisition, indicating to these lenders that GA LLC would be participating in the financing as well. (Id. at ¶¶ 90-92)

Although Kelly knew about GA LLC's plans to acquire Emdeon, neither Kelly nor GA LLC disclosed the alleged conflict of interest to ProxyMed or retracted any of the prior assurances allegedly given to ProxyMed throughout the negotiations surrounding the Emdeon deal. (Id. at ¶¶ 1, 54, 58-59, 65, 70, 72-73, 77, 82)

After GA LLC's investment in Emdeon was publicly announced on September 26, 2006, to ProxyMed's surprise, GA LLC advised ProxyMed that it would not provide any of the allegedly promised financing. (Id. at ¶¶ 2, 101-03) On October 5, 2006, Kelly resigned from the ProxyMed board due to the conflict of interest arising from GA LLC's new investment in Emdeon. (Id. at ¶ 9) Although GA LLC did not provide any further financing for ProxyMed's acquisitions, it held its shares in ProxyMed until December 2008, when ProxyMed declared bankruptcy. (See id. at ¶ 120)

Plaintiff asserts that Kelly owed ProxyMed fiduciary duties as a director. (Id. at ¶ 4) Further, plaintiff asserts that GA LLC owed ProxyMed fiduciary duties based on a special relationship between the companies of trust and confidence, advice that GA LLC gave to ProxyMed, and GA LLC's role as a controlling shareholder in ProxyMed. (Id. at ¶ 3) Plaintiff claims that GA LLC and Kelly breached their fiduciary duties, and that GA LLC aided and abetted Kelly's breach. (Id. at ¶ 106) As a result of these breaches, plaintiff alleges that ProxyMed was misled into pursuing a financial strategy which it otherwise would not have adopted. (Id.) Moreover, plaintiff alleges that

5

ProxyMed would have pursued alternative financing for its planned acquisitions had it known that GA LLC would not finance the transactions. (*Id.*) Without GA LLC's financing, ProxyMed was unable to close on its planned acquisition of PPONext. (*Id.* at ¶ 110) In 2006, as a result of its inability to secure financing, ProxyMed's auditors issued a "going concern" opinion for ProxyMed's year-end financial statements. (*Id.* at ¶ 112) In November 2007, ProxyMed was forced to sell its PPO business in a fire sale. (*Id.* at ¶¶ 2, 113-14) In July 2008, facing default on its line of credit, ProxyMed filed the bankruptcy case. (*Id.* at ¶¶ 2, 116) With regard to damages, plaintiff alleges that ProxyMed lost $100 million of "enterprise value" as a result of defendants' actions, ultimately leading to ProxyMed's bankruptcy. (*Id.* at ¶¶ 127, 133, 140)

## III. STANDARD OF REVIEW

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim,

accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210-

11. Second, a court should determine whether the remaining well-pled facts sufficiently

show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556

U.S. at 679). As part of the analysis, a court must accept all well-pleaded factual

allegations in the complaint as true, and view them in the light most favorable to the

plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536

U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

In this regard, a court may consider the pleadings, public record, orders, exhibits

attached to the complaint, and documents incorporated into the complaint by reference.

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin,

Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

The court's determination is not whether the non-moving party "will ultimately

prevail" but whether that party is "entitled to offer evidence to support the claims."

*United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir.

2011). This "does not impose a probability requirement at the pleading stage," but

instead "simply calls for enough facts to raise a reasonable expectation that discovery

will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting

*Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the

court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-

64.

## IV. DISCUSSION

### A. Claim for Breach of Fiduciary Duty against GA LLC

7

Under Delaware law,[4] a shareholder owes a fiduciary duty to a company if it is a

majority shareholder or if it exercises control over the affairs of the company. *Ivanhoe*

*Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987). For a minority

shareholder to exercise control, "a plaintiff must allege domination by a minority

shareholder through actual control of corporation conduct." *Kahn v. Lynch*

*Communication Systems, Inc.*, 638 A.2d 1110, 1114 (Del. 1994) (quoting *Citron v.*

*Fairchild Camera & Instrument Corp.*, 569 A.2d 53, 70 (Del. 1989)). A minority

shareholder, therefore, is not controlling

> unless it exercises "such formidable voting and managerial
> power that [it], as a practical matter, [is] no differently
> situated than if [it] had majority voting control." Accordingly,
> the minority blockholder's power must be "so potent that
> independent directors . . . cannot freely exercise their
> judgment, fearing retribution" from the controlling minority
> blockholder.

*In re Morton's Restaurant Group S'holder Litig.*, 74 A.3d 656, 665 (Del. Ch. 2013) (citing

*In re PNB Holding Co. S'holder Litig*, Civ. No. A.28-N, 2006 WL 2403999, at *9 (Del.

Ch. Aug. 18, 2006)) (omission and alterations in original).

---

[4] Federal courts apply the choice of law principles of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Delaware choice of law principles, the law of the state of incorporation determines issues of internal corporate affairs, such as fiduciary duty. *Norman v. Elkin*, Civ. No. 06-005, 2007 WL 2822798, at *3 (D. Del. Sept. 26, 2007). Florida law, therefore, governs because ProxyMed is incorporated in Florida. (D.I. 59 at ¶ 10) However, because Florida courts have used Delaware law to construe Florida corporate law, this court relies on Delaware law. *See In re PMTS Liquidating Corp.*, 452 B.R. 498, 507 (Bankr. D. Del. 2011) ("Even though Florida law governs this claim, Delaware law remains relevant because Florida courts routinely look to Delaware corporate law to establish their own corporate doctrines."). Moreover, defendants concede that "to the extent Florida courts have opined on the issues relevant to the [c]omplaint, these decisions appear fully consistent with those of Delaware courts." (D.I. 62 at 9 n.9)

Since GA LLC was never more than a 29 percent shareholder in ProxyMed, it cannot be considered a majority shareholder. Plaintiff makes the conclusory allegation that GA LLC owed a duty to ProxyMed "as a controlling shareholder," but fails to plead sufficient facts to support that inference. The allegation rests on the following well-pled facts: (1) that GA LLC controlled 29 percent of the ProxyMed vote and was entitled to appoint two designees to the Board as well as an "observer" with a right to attend all meetings of the Board; (2) that GA LLC appointed Kelly to the Board to represent its interests; (3) that GA LLC was involved in the vetting and hiring of Lettko as ProxyMed's CEO; (4) that "Lettko would not have been hired without the approval of [GA LLC]"; (5) that GA LLC required periodic updates from Lettko regarding ProxyMed; and (6) that GA LLC "became directly involved" with various managerial duties for ProxyMed. (D.I. 59 at ¶¶ 11-13, 23, 37-38)

Plaintiff's well-pled facts here fail to "logically infer that [GA LLC] exercised actual domination and control over . . . the directors who comprised a majority of [ProxyMed's] board." *Morton's Restaurant Group*, 74 A.3d at 665 (citations omitted) (finding that a shareholder with a 27.7 percent stake in the company, two designees on the board, and an employee who reached out to a potential financial advisor who was ultimately retained by the board did not exercise actual control over the company). The fact that GA LLC had one representative (Kelly) on the Board, even as the chairman, does not establish domination or control, considering that the Board consisted of between five and eight directors throughout Kelly's tenure. Furthermore, GA LLC's involvement in ProxyMed's CEO selection process and managerial duties, as well as the request for company updates from the CEO, reflect the fact that a substantial minority investor has

9

an incentive to be involved in company affairs and know how the company is performing in order to keep an eye on its investment. Contrary to plaintiff's argument, these allegations fail to adequately allege the control and domination required to establish fiduciary duty under Delaware law; therefore, plaintiff has failed to state a claim of breach of fiduciary duty with respect to GA LLC.[5] Defendants' motion is granted in this regard.

## B. Claim for Breach of Fiduciary Duty against Kelly

Both parties agree that Kelly owed fiduciary duties to ProxyMed as a corporate director. (See D.I. 62 at 14; D.I. 69 at 5) Plaintiff alleges that Kelly breached these fiduciary duties by: (1) personally assuring Emdeon's chairman that GA LLC's interest in ProxyMed would not impede GA LLC's deal with Emdeon; (2) concealing the conflict of interest stemming from his involvement in GA LLC's Emdeon deal from ProxyMed while remaining chairman of the Board; (3) making repeated assurances that GA LLC would provide financing for ProxyMed's acquisitions even after he knew about GA LLC's pending investment in Emdeon; and (4) failing to advise ProxyMed to seek alternative financing once he knew that GA LLC would not be providing additional funding to the company. (D.I. 59 at ¶ 123)

## 1. Pleading standard

_____

[5] Plaintiff also argues that GA LLC owed a fiduciary duty to ProxyMed because it was in a position of trust and confidence. Under Delaware law, this is not a valid basis to establish fiduciary duty between a shareholder and the company in which it invests. See Ivanhoe Partners, 535 A.2d at 1344 ("Under Delaware law a shareholder owes a fiduciary duty **only** if it owns a majority interest in or exercises control over the business affairs of the corporation." (emphasis added)). Indeed, the cases cited by plaintiff for its proposition are not based in either Delaware or Florida law.

10

Defendants assert that the breach of fiduciary duty claim against Kelly should be assessed under Rule 9(b) because the claim is "premised on alleged misrepresentations." (*Id.* at 15) Allegations of fraud or mistake must be pled with particularity. Fed. R. Civ. P. 9(b). Under Delaware law, breach of fiduciary duty claims that do not "sound in fraud" are not governed by 9(b), even if there are allegations that the defendant knew or should have known that claims were false or misleading. *Buckley v. O'Hanlon*, Civ. No. 04-955, 2007 WL 956947, at *5 (D. Del. Mar. 28, 2007); *see also In re Fruehauf Trailer Corp.*, 250 B.R. 168, 197 (D. Del. 2000) ("Although there is a dearth of case law, the Rule 9(b) heightened pleading requirement generally does not apply to the state law claim[] of breach of fiduciary duty . . . .").

Although the complaint alleges that Kelly misrepresented GA LLC's position on providing financing to ProxyMed, such allegations are insufficient to state a claim for breach of fiduciary duty based in fraud. The complaints in both *Buckley* and *Fruehauf* contained similar language indicating that representations made to a company were known by defendants to be either false or misleading. Regardless of the plaintiffs' use of language frequently seen in fraud claims, the "choice of terms . . . do[es] not transform claims for breach of fiduciary duty into claims based in fraud." *Buckley*, 2007 WL 956947, at *5. The court concludes that the breach of fiduciary duty claim against Kelly is not "based in fraud." Therefore, the heightened pleading standard of Rule 9(b) does not apply, and plaintiff's claim against Kelly for breach of fiduciary duty need not be pled with particularity.

## 2. Sufficiency of pleading

11

Under Delaware law, a corporate director owes a "triad" of fiduciary duties to the company: loyalty, good faith, and due care. *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998). Although the standards for these duties are "measured by no fixed scale," *Guth v. Loft*, 5 A.2d 503, 510 (Del. 1939), the law demands that directors "absolutely refrain from any act which breaches the trust reposed in them, [and] also . . . affirmatively protect and defend those interests entrusted to them." *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1280 (Del. 1983).

"Delaware had adopted the view that a corporate officer or director is entirely free to engage in an independent competitive business, so long as he violates no legal or moral duty with respect to the fiduciary relation that exists between the corporation and himself." *Craig v. Graphic Arts Studio, Inc.*, 166 A.2d 444, 445 (Del. Ch. 1960). One such "legal or moral duty" is the duty of disclosure, which falls under the director's general duty of loyalty. Although a director has no general duty to disclose, he must do so when he "is personally engaged in transactions harmful to the corporation, but beneficial to the director." *Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC*, 922 A.2d 1169, 1184 (Del. Ch. 2006). Plaintiff has alleged that Kelly was personally engaged in the Emdeon transaction by meeting with Emdeon's chairman and discussing the transaction with other GA LLC directors. (D.I. 59 at ¶ 58) The complaint also alleges that the Emdeon transaction harmed ProxyMed because it led GA LLC to decide not to fund ProxyMed's new acquisitions. Moreover, plaintiff alleges that Kelly benefited from the transaction by receiving an ownership interest in Emdeon as a partner of GA LLC, as well as a "generous" severance package that allowed Kelly to retain his ownership

12

interests in GA LLC investments after ending his employment there. (*Id.* at ¶¶ 124-25) Since the complaint also alleges that Kelly never disclosed the pending Emdeon transaction to ProxyMed, the court concludes that, considering the allegations in the light most favorable to plaintiff, plaintiff has adequately pled that Kelly had a duty to disclose his conflict of interest to ProxyMed and failed to do so, thereby breaching his fiduciary duty as a director.

"[A] fiduciary who learns that her earlier communications to her beneficiaries were false and nonetheless knowingly and in bad faith remains silent even as the beneficiaries continue to rely on those earlier statements . . . breaches her duty of loyalty." *Metro Comm. Corp. BVI v. Advanced Mobilecomm Technologies, Inc.*, 854 A.2d 121, 153 (Del. Ch. 2004). The complaint alleges that Kelly continually represented to ProxyMed that GA LLC would "likely" provide financing for ProxyMed's acquisitions, and failed to recant these representations upon learning of GA LLC's pending transaction with Emdeon. (*See* D.I. 59 at ¶ 48) Under Delaware law, "[i]t is the general rule that mere expressions of opinion as to probable future events, when clearly made as such, cannot be deemed . . . misrepresentations." *Consol. Fisheries Co. v. Consol. Solubles Co.*, 112 A.2d 30, 37 (Del. 1995). Viewing the allegations in the light most favorable to plaintiff, however, the complaint states a plausible claim that Kelly's representations were not clearly made as "mere expressions of opinion," but rather were false assurances of GA LLC's financial commitment to ProxyMed that Kelly never recanted or corrected and upon which ProxyMed relied. Therefore, defendants' motion to dismiss the claim is denied in this regard.

13

## C. Claim for Aiding and Abetting against GA LLC

Plaintiff alleges, in the alternative to its breach of fiduciary claim against GA LLC,

that GA LLC aided and abetted Kelly's breach of fiduciary duty. (D.I. 59 at ¶ 136) In

Delaware,

> [a] third party may be liable for aiding and abetting a breach
> of a corporate fiduciary's duty to the stockholders if the third
> party "knowingly participates" in the breach. To survive a
> motion to dismiss, the complaint must allege facts that
> satisfy the four elements of an aiding and abetting claim:
> "(1) the existence of a fiduciary relationship, (2) a breach of
> the fiduciary's duty, . . . (3) knowing participation in that
> breach by the defendants, and (4) damages proximately
> caused by the breach."

*Shamrock Holdings v. Arenson*, 456 F. Supp. 2d 599, 610 (D. Del. 2006) (citing

*Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001)) (omission in original). The

court has already held that plaintiff's breach of duty claim against Kelly is sufficiently

well-pled to survive a motion to dismiss; therefore, the viability of plaintiff's aiding and

abetting claim against GA LLC rests on whether plaintiff has made a sufficient showing

of knowing participation by GA LLC and of damages proximately caused by Kelly's

breach.

Under Delaware law, "[a] claim of knowing participation need not be pled with

particularity. However, there must be factual allegations in the complaint from which

knowing participation can be reasonably inferred. . . . Conclusory statements of

knowing participation will not suffice." *In re General Motors (Hughes) S'holder Litig.*,

Civ. No. A.20269, 2005 WL 1089021, at *24 (Del. Ch. May 4, 2005) (footnotes omitted).

The complaint alleges that GA LLC directed Kelly to help GA LLC secure the Emdeon

14

transaction, even though GA LLC knew that this created a conflict of interest for Kelly on the Board. (D.I. 59 at ¶¶ 58, 138) Taking this allegation in the light most favorable to plaintiff, the court can reasonably infer that GA LLC knew of Kelly's breach of fiduciary duty and participated therein. Plaintiff has sufficiently pled GA LLC's knowing participation in Kelly's breach.

Plaintiff has also pled that, but for Kelly's breach of fiduciary duty, ProxyMed would not have sustained the $100 million loss to its enterprise value that ultimately led to its bankruptcy. (D.I. 59 at ¶¶ 109-12, 127) Under Delaware law, but-for causation establishes proximate causation. See Culver v. Bennett, 588 A.2d 1094, 1097 (Del. 1991). Since plaintiff pleads an unbroken chain of events, starting with Kelly's breach and leading to ProxyMed's loss of enterprise value, the allegations demonstrating damages proximately caused by Kelly's breach of fiduciary duty are sufficiently pled to survive a motion to dismiss. Since all elements of the claim are plausibly pled, the complaint sufficiently states a claim for aiding and abetting against GA LLC. Defendants' motion to dismiss is denied in this regard.

## V. CONCLUSION

For the foregoing reasons, the court grants defendants' motion to dismiss (D.I. 61) with respect to Count II (breach of fiduciary duties against GA LLC) and denies the motion with respect to Count I (breach of fiduciary duties against Kelly) and Count III (aiding and abetting against GA LLC). An appropriate order shall issue.

15